Nos. 12-1573 / 12-1653
**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

ELIZABETH MANNING, LISA RIVERS, RHONDA
WILLIAMS, and REVA MCCARTHY, on behalf of themselves and
all other employees similarly situated,

Plaintiffs-Appellants,

v.

BOSTON MEDICAL CENTER CORPORATION,
ELAINE ULLIAN, and JAMES CANAVAN,

Defendants-Appellees,

BOSTON REGIONAL MEDICAL CENTER, INC., BOSTON
REGIONAL MEDICAL CENTER, LLC, and BOSTON MEDICAL
CENTER 403B RETIREMENT PLAN,

Defendants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

**BRIEF OF DEFENDANTS-APPELLEES**

---

Richard L. Alfred (Appeals Bar No. 41022)
Kristin G. McGurn (Appeals Bar No. 27931)
C.J. Eaton (Appeals Bar No. 1129804)
Jessica M. Schauer (Appeals Bar No. 1142613)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, Massachusetts  02210-2028
Telephone:  (617) 946-4800

14791715v.3

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendants-Appellees disclose that Boston Medical Center Corporation is a not-for-profit charitable organization with no parent corporation, and no publicly held corporation owns 10% or more of its stock.

14791715v.3

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS ............................................................... ii

TABLE OF AUTHORITIES ........................................................ iv

STATEMENT OF FACTS ..............................................................1

SUMMARY OF THE ARGUMENT ..................................................7

ARGUMENT ............................................................................9

I.    PLAINTIFFS FAIL TO ASSERT FACTS SUFFICIENT TO
SATISFY THE APPLICABLE PLEADING STANDARDS........................9

    A.    The District Court Correctly Held That Plaintiffs' Factual
Allegations Are Insufficient to Make Their FLSA Claims
Plausible ....................................................................10

    B.    Plaintiffs' Claims Against Individual Defendants Elaine Ullian
and James Canavan Fail to Satisfy the *Twombly* and *Iqbal*
Pleading Standards .......................................................14

    C.    Dismissal of Plaintiffs' Common Law Claims Should Be
Affirmed ....................................................................18

        1........The District Court Correctly Retained Jurisdiction
Over the Common Law Claims ................................18

        2........The District Court Properly Dismissed the State Law
Claims .............................................................20

II.    THE FLSA AND MASSACHUSETTS WAGE STATUTES
PREEMPT PLAINTIFFS' DERIVATIVE COMMON LAW
CLAIMS ..........................................................................23

III.    PLAINTIFFS' FLSA CLAIM IS PRECLUDED BY FEDERAL
LABOR LAW....................................................................27

    A.    The FLSA Was Not Intended to Impair Collective
Bargaining .................................................................29

    B.    The FLSA by Its Terms Accommodates the Bargaining
Process.......................................................................31

C.    Preclusion of Plaintiffs' FLSA Claim Should Result from the Principles That Dictate Preemption of the State Law Claims ........................................................................................34

D.    "Waiver" Cases Like *Barrentine* Do Not Require a Different Result ...................................................................36

IV.    THE DISTRICT COURT PROPERLY STRUCK PLAINTIFFS' CLASS ALLEGATIONS ...........................................................38

A.    Plaintiffs' Class and Collective Allegations Must Meet the Requirements of Rule 8 ....................................................39

B.    Plaintiffs' FLSA Allegations Are Insufficient to Establish a Similarly Situated Collective ...........................................44

C.    Rule 23 Also Requires More Than Mere Legal Conclusions ............46

D.    The Classes Pleaded by Plaintiffs Would Be Unmanageable.............48

V.    The District Court Did Not Abuse its Discretion in Denying Plaintiffs Leave to Amend ...........................................................51

CONCLUSION .....................................................................................55

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*ACA Fin. Guaranty Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008)....................................................................54

*Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dep't of
  Homeland Sec.*,
  510 F.3d 1 (1st Cir. 2007)......................................................................25

*Allis-Chalmers v. Lueck*,
  471 U.S. 202 (1985)..........................................................................34, 35

*Anderson v. Sara Lee Corp.*,
  508 F.3d 181 (4th Cir. 2007) ................................................................24

*Anish v. Nat'l Sec. Corp.*,
  2010 WL 4065433 (S.D. Fla.) ...............................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................*passim*

*Attanasio v. Cmty. Health Sys., Inc.*,
  2012 WL 1038718 (M.D. Pa.) ...............................................................17

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981)..........................................................................36, 37

*Barrus v. Dick's Sporting Goods, Inc.*,
  732 F. Supp. 2d 243 (W.D.N.Y. 2010)...........................11, 40, 41, 50

*Baystate Alt. Staffing, Inc. v. Herman*,
  163 F.3d 668 (1st Cir. 1998)............................................................15, 16

*Bearden v. Honeywell Int'l Inc.*,
  2010 WL 1223936 (M.D. Tenn.).............................................................40

*Bell Atlantic Corporation v. Twombly*,
  550 U.S. 544 (2007)......................................................................*passim*

14791715v.3

*Bouthner v. Cleveland Constr., Inc.*,
2011 WL 2976868 (D. Md.) ...................................................................24

*Burroughs v. MGC Services, Inc.*,
2009 WL 959961 (W.D. Pa.).................................................................13

*Cameron v. Idearc Media Corp.*,
2011 WL 4054864 (D. Mass.) ...............................................................36

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
556 U.S. 635, 129 S. Ct. 1862 (2009)...................................................19

*Cavallaro v. UMass Mem'l Health Care, Inc.*,
No. 09-cv-40152 (D. Mass) ..............................................................2, 53

*Cavallaro v. UMass Memorial Healthcare, Inc.*,
678 F.3d 1 (1st Cir. 2012)......................................................................22

*Chao v. Hotel Oasis, Inc.*,
493 F.3d 26 (1st Cir. 2007)....................................................................15

*Chen v. Street Beat Sportswear, Inc.*,
364 F. Supp. 2d 269 (E.D.N.Y. 2005)...................................................24

*Curran v. FedEx Ground Package Sys., Inc.*,
593 F. Supp. 2d 341 (D. Mass. 2009)....................................................54

*Davis v. Food Lion*,
792 F.2d 1274 (4th Cir. 1986) ...............................................................11

*Dobin v. CIOView Corp.*,
2003 WL 22454602 (Mass. Super. Ct.).................................................26

*Elswick v. Daniels Elec., Inc.*,
787 F. Supp. 2d 443 (S.D. W.Va. 2011).................................................36

*Freundt v. Allied Tube & Conduit Corp.*,
2007 U.S. Dist. LEXIS 87852 (N.D. Ill.) ..............................................36

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982)..........................................................................39, 47

*Haggins v. Verizon New England,*
   736 F. Supp. 2d 326 (D. Mass. 2010)................................................37

*Haggins v. Verizon New England, Inc.,*
   648 F.3d 50 (1st. Cir. 2011)....................................................37, 38

*Hamilton v. Partners Healthcare,*
   No. 09-cv-11461(D. Mass)............................................................2

*Hatch v. Dep't for Children, Youth & Their Families,*
   274 F.3d 12 (1st Cir. 2001).........................................................51

*Henson v. Pulaski Cnty. Sherrif Dep't,*
   6 F.3d 531 (8th Cir. 1993) ..........................................................13

*Hoffmann-LaRoche v. Sperling,*
   493 U.S. 165 (1989)...................................................................20

*Holt v. Rite Aid Corp.,*
   333 F. Supp. 2d 1265 (M.D. Ala. 2004)..........................................49

*Hoops v. Keyspan Energy,*
   2011 U.S. Dist. LEXIS 23117 (E.D.N.Y.) .......................................36

*InterGen N.V. v. Grina,*
   344 F.3d 134 (1st Cir. 2003)........................................................25

*Johnson v. D.M. Rothman Co., Inc.,*
   2012 WL 1788144 (S.D.N.Y.)......................................................36

*Jonites v. Exelon Corp.,*
   522 F.3d 721 (7th Cir. 2008) .......................................................32

*Jonites v. Exelon Corp.,*
   No. 05 C 4234, 2007 U.S. Dist. LEXIS 55400 (N.D. Ill.) ...........32, 33

*Kent v. SunAmerica Life Ins. Co.,*
   190 F.R.D. 271 (D. Mass. 2000)....................................................48

*Landry v. Peter Pan Bus Lines, Inc.,*
   No. 09-11012 (D. Mass. Nov. 20, 2009) ....................................40, 41

14791715v.3

*Leahy v. City of Chicago, Illinois*,
   96 F.3d 228 (7th Cir. 1996) ..........................................................................*passim*

*Lingle v. Norge Div. of Magic Chef, Inc.*,
   486 U.S. 399 (1988)...........................................................................................34

*Maldonado v. Fontanes*,
   568 F.3d 263 (1st Cir. 2009)...............................................................................10

*Manning v. Boston Medical Center Corp.*,
   No. 09-cv-11724 (D. Mass.) ................................................................................14

*Martin v. Lake Cnty. Sewer Co.*,
   269 F.3d 673 (6th Cir. 2001) .........................................................................33, 35

*Martinez v. Regency Janitorial Svcs., Inc.*,
   2011 WL 4374458 ...............................................................................................13

*Masiello, et al. v. Marriott Int'l, Inc.*,
   2011 Mass. Super. LEXIS 59 (Mass. Super. Ct.) (Lauriat, J) ...........................27

*Mechmet v. Four Seasons Hotels, Ltd.*,
   825 F.2d 1173 (7th Cir. 1987) ............................................................................31

*Moeck v. Gray Supply Corp.*,
   2006 WL 42368 (D.N.J.) .....................................................................................24

*Moghaddam v. Dunkin' Donuts, Inc.*,
   295 F. Supp. 2d 136 (D. Mass. 2003)..................................................................21

*Morgan v. SpeakEasy, LLC*,
   2007 WL 2757170 (N.D. Ill.) ..............................................................................24

*Mouiny v. Comm. Flats Dev. Corp.*,
   No. SUCV-2006-1115-BLS1 (Mass. Super. Ct. Aug. 20, 2008) .......................27

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
   2011 WL 321186 (S.D.N.Y.)..........................................................17, 22, 24, 36

*Nakahata v. New York-Presbyterian Healthcare System, Inc.*,
   2012 WL 3886555 (S.D.N.Y.).............................................................................54

*Oracle USA, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009)........................................................................43

*Palmer v. Champion Mortg.*,
    465 F.3d 24 (1st Cir. 2006)................................................................................54

*Papex Int'l Brokers Ltd. v. Chase Manhattan Bank, N.A.*,
    821 F.2d 883 (1st Cir. 1987)..............................................................................25

*Pilgrim v. Universal Health Card LLC*,
    660 F.3d 943 (6th Cir. 2011) .............................................................................42

*Pruell v. Caritas Christi*,
    2010 WL 3789318 (D. Mass.) ...........................................................................52

*Pruell v. Caritas Christi*,
    678 F.3d 10 (1st Cir. 2012)..............................................................11, 52, 53

*Pruell v. Caritas Christi*,
    No. 09-cv-11466 (D. Mass) ...............................................................................2

*Rodriguez v. Doral Mortg. Co.*,
    57 F.3d 1168 (1st Cir. 1995)..............................................................................19

*Ross-Randolph v. Allstate Ins. Co.*,
    2001 WL 36042162 (D. Md.) ............................................................................42

*Sch. Comm. of Boston v. Reilly*,
    362 Mass. 334 (1972) ........................................................................................26

*Sch. Comm. v. City of Lowell*,
    265 Mass. 353 (1928) ........................................................................................26

*Scott v. Family Dollar Stores, Inc.*,
    2012 WL 113657 (W.D.N.C.) ..........................................................................47

*Sec'y of Labor v. Labbe*,
    319 Fed. Appx. 761 (11th Cir. 2008)................................................................13

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...........................................................................................31

*Solis v. Velocity Express, Inc.*,
    2010 WL 2990293 (D. Or.) ...............................................................15

*Sorenson v. CHT Corp.*,
    2004 WL 442638 (N.D. Ill.) ..............................................................24

*Summers v. Howard Univ.*,
    127 F. Supp. 2d 27 (D.D.C. 2000)......................................................14

*Tamburello v. Comm-Tract Corp.*,
    67 F.3d 973 (1st Cir. 1995)................................................................28

*Tennessee Coal, Iron & Ry. Co. v. Muscoda Local No. 123*,
    321 U.S. 590 (1944)...........................................................................31

*Thompson v. Merck & Co.*,
    2004 WL 62710 (E.D. Pa. Jan. 6, 2004).............................................42

*Torres-Alamo v. Puerto Rico*,
    502 F.3d 20 (1st Cir. 2007)................................................................55

*Tracy v. NVR, Inc.*,
    2009 WL 3153150 (W.D.N.Y.) ..........................................................18

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987).............................................................................35

*United States v. United States Trust Co.*,
    106 F.R.D. 474 (D. Mass. 1985).........................................................20

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*,
    363 U.S. 593 (1960)...........................................................................34

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)...........................................................................29

*Vadino v. A. Valey Eng'rs*,
    903 F.2d 253 (3d Cir. 1990) .........................................................33, 35

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ..........................................................47

14791715v.3

*Wal-Mart Stores, Inc., v. Dukes*,
    --- U.S. ---, 131 S.Ct. 2541 (2011) ...................................................48

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993) .......................................................25

*White v. Baptist Mem. Health Care Corp.*,
    2011 WL 1883959 (W.D. Tenn.) ..........................................46

*Wolman v. Catholic Health Sys. of Long Island, Inc.*,
    2011 WL 1741905 (E.D.N.Y) ...............................................22

*Woolfson v. Caregroup, Inc.*,
    No. 09-cv-11464 (D. Mass) .....................................................2

*Wright v. Family Dollar Inc.*,
    2010 WL 4962838 (N.D. Ill.) ...............................................48

*Zhong v. August August Corp.*,
    498 F. Supp. 2d 625 (S.D.N.Y. 2007) ..................................40

**STATUTES**

28 U.S.C. § 1367 .....................................................................7, 19

National Labor Relations Act, 29 U.S.C. § 151 ........................29

29 U.S.C. § 158(d) ....................................................................29

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* .............*passim*

Labor Management Relations Act, 29 U.S.C. § 185 ("§ 301") ......*passim*

Mass. Gen. Laws ch. 149 .....................................................*passim*

Mass. Gen. Laws ch. 151, § 1A ................................................24

**OTHER AUTHORITIES**

5 Moore et al., Moore's Federal Practice, § 23.60[2] ...............41

82 Cong. Rec. 1395 (Dec. 13, 1937) ........................................30

83 Cong. Rec. 7285 (May 23, 1938) .........................................30

83 Cong. Rec. 7291 (May 23, 1938)........................................................................30

Clyde W. Summers, *Labor Law as the Century Turns: A Changing of the Guard*, 67 Neb. L. Rev. 7, 8-9 (1988) ..............................................................30

Fed. R. App. P. 32.......................................................................................................57

Fed. R. Civ. P. 8....................................................................................................*passim*

Fed. R. Civ. P. 12(f) ..........................................................................................40, 51

Fed. R. Civ. P. 23................................................................................................*passim*

Fed. R. Civ. P. 42...................................................................................................20

J. Huthmacher, *Senator Robert F. Wagner and the Rise of Urban Liberalism* (1968)....................................................................................................................31

Senate Report No. 884, 75th Cong., 1st Sess. (July 6, 1937)..................................30

14791715v.3

## STATEMENT OF FACTS

Boston Medical Center Corporation ("BMC") is a not-for-profit healthcare organization that operates Boston Medical Center, a 496-bed hospital located in the South End neighborhood of Boston. Plaintiffs are current and former employees of BMC who are or were paid on an hourly basis. Plaintiffs Manning, Rivers, and Williams – like the vast majority of BMC's employees – are members of unionized bargaining units. The terms and conditions of employment of each bargaining unit are governed by a collective bargaining agreement ("CBA") between BMC and the Massachusetts Nurses Association ("MNA"); 1199SEIU United Healthcare Workers East; or the American Federation of State, County, and Municipal Employees ("AFSCME"), Council 93, AFL-CIO/CLC.

Plaintiffs filed their original complaint in the case underlying Appeal No. 12-1573 ("Federal Law Complaint") on September 3, 2009, in the U.S. District Court for the District of Massachusetts. Record Appendix ("R.A.") at 20. Plaintiffs alleged claims under the Fair Labor Standards Act ("FLSA"), Employee Retirement Income Security Act ("ERISA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as a claim for estoppel. R.A. at 20. They also simultaneously filed a complaint in Massachusetts Superior Court ("State Law Complaint") alleging virtually identical facts and a variety of state law

1

causes of action.[1]  In both their Federal Law Complaint and State Law Complaint,

Plaintiffs asserted their claims on behalf of a massive putative class (and, with

respect to their FLSA claims, a collective pursuant to 29 U.S.C. § 216(b))

consisting of hourly employees in a wide variety of job positions.  Defendants

removed the State Law Complaint to the District Court on October 16, 2009, based

on preemption of Plaintiffs' claims under Section 301 of the Labor Management

Relations Act, 29 U.S.C. § 185 ("§ 301").  Pls.' Br., 4.  Defendants also moved to

consolidate the two actions, given that the parties were identical and the facts and

allegations virtually identical.

    Defendants subsequently moved to dismiss both complaints.  Pls.' Br., 4-5.

With respect to the Federal Law Complaint, Defendants argued that Plaintiffs

failed to plead sufficient facts to lend plausibility to their claims as required

pursuant to *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and that Plaintiffs failed to state a

cognizable claim under RICO or ERISA.  Pls.' Add., 1-5.  With respect to the State

Law Complaint, Defendants argued, among other things, that Plaintiffs' claims

were preempted by § 301 and that Plaintiffs were exempt from coverage under the

---

[1] Plaintiffs' counsel also filed virtually identical complaints against several other
area hospital systems the same day.  *See Hamilton v. Partners Healthcare*, No. 09-
cv-11461(D. Mass); *Woolfson v. Caregroup, Inc.*, No. 09-cv-11464 (D. Mass);
*Pruell v. Caritas Christi*, No. 09-cv-11466 (D. Mass); *Cavallaro v. UMass Mem'l
Health Care, Inc.*, No. 09-cv-40152 (D. Mass).

state wage statutes on which they had based their claims.  Defendants' Addendum

("Defs.' Add."), 2.

On February 28, 2011, the court dismissed Plaintiffs' FLSA claims without

prejudice, and dismissed all remaining counts of the Federal Law Complaint with

prejudice.[2]  Pls.' Add., 1-5.  In dismissing Plaintiffs' FLSA claims, the court held

that they failed to satisfy the applicable pleading standards because their complaint

was devoid of basic information regarding their claims, including the aggregate

number of hours worked, the amount of wages allegedly due, and the dates on

which they allegedly performed uncompensated work or attended training for

which they allegedly should have received compensation.  *Id.*

On March 10, 2011, the court allowed Defendants' Motion to Dismiss the

State Law Complaint with prejudice as to Plaintiffs' state statutory claims because

Plaintiffs worked in a hospital and hospitals are exempt from those state statutes,

and as to the remaining common law claims because they are preempted by § 301.

Defs.' Add., 5.  The court allowed the motion without prejudice to Plaintiffs

repleading a "recharacterized § 301 count."  Defs.'Add., 6.

On April 14, 2011, following dismissal of both of Plaintiffs' complaints, the

court held a status conference in which it gave Plaintiffs clear instructions with

respect to any amended complaint they intended to file.  The court directed

---

[2] Plaintiffs do not challenge dismissal of their RICO, ERISA, or estoppel claims.

3

Plaintiffs to file a single complaint consisting of two claims – one FLSA claim and one non-preempted contract claim. The court stated that because Plaintiffs' other common law claims had been dismissed with prejudice, they would not be permitted to replead those claims.

Plaintiffs filed their Amended Complaint on April 29, 2011. R.A. 13. In addition to pleading FLSA claims on behalf of a putative class of union and non-union employees and contract claims on behalf of non-union employees only, the Amended Complaint contained eight additional counts, including two additional contract claims and claims for money had and received, *quantum meruit*/unjust enrichment, fraud, negligent misrepresentation, promissory estoppel, and conversion. R.A. 361-363, ¶¶ 189-215. Plaintiffs again pleaded their claims on behalf of an expansive putative class and collective.

Defendants moved to dismiss the Amended Complaint on May 27, 2011, arguing that Plaintiffs' allegations, including their claims against individual defendants Elaine Ullian and James Canavan (the "Individual Defendants"), remained insufficiently pleaded under the *Twombly*/*Iqbal* standard. R.A. 370. Defendants also asserted that Plaintiffs' FLSA claim was precluded by federal labor law, that the FLSA and state wage statutes preempted Plaintiffs' common law claims, and that their class allegations were unsupported and should be stricken from the Amended Complaint. R.A. 371. On June 24, 2011, Plaintiffs

4

filed a motion to conditionally certify the case as a collective action pursuant to 29 U.S.C. § 216(b).

On April 18, 2012, the District Court issued its Memorandum of Decision dismissing the Amended Complaint in its entirety and with prejudice. Pls.' Add., 7-25. The court held that Plaintiffs' claims against the Individual Defendants were insufficient because they failed to plead any facts linking those individuals to the misconduct alleged in the Amended Complaint. Pl. Add. at 10. The court also found that Plaintiffs had failed to plead sufficient facts to make their FLSA or common law claims plausible. *Id.* at 10-21. The court held that to the extent Plaintiffs brought their common law claims "to recover overtime pay allegedly due" those claims "are preempted by the FLSA." Pls.' Add., 9, n. 4. In addition, the court struck Plaintiffs' class and collective allegations from the Amended Complaint, holding that Plaintiffs failed to meet the pleading standards with regard to their "proposed nebulous block of potentially over 4,000 plaintiffs." Pls.' Add., 14. Finally, the court denied Plaintiffs' request for leave to replead their claims, noting that "*Twombly* and *Iqbal* are not new ground for plaintiffs, nor should their pleading standards be a surprise." [3] *Id*. at 23. The District Court denied Plaintiffs'

---

[3] The court did not address Defendants' argument that the Labor Management Relations Act precludes Plaintiffs from bringing FLSA claims in federal court before pursing the grievance and arbitration provisions of the CBAs, nor did it address Defendants' argument that Plaintiffs' common law claims are preempted by the Massachusetts wage statutes.

14791715v.3

conditional certification motion as moot, but stated in a footnote that the motion
failed for the same reasons that precipitated the court's decision to strike the class
and collective allegations. *Id*. at 23 n. 7.

Plaintiffs subsequently appealed the dismissal of their Amended Complaint
(Appeal No. 12-1573), as well as the dismissal of their earlier State Law Complaint
(Appeal No. 12-1563).   Plaintiffs moved to consolidate their two appeals on
August 14, 2012, representing that they would rely on the brief they had already
filed in Appeal No. 12-1573 with respect to both cases.  This Court granted that
motion on August 16, 2012.

14791715v.3

## SUMMARY OF THE ARGUMENT

As the District Court correctly recognized, Plaintiffs' FLSA claim, as pleaded in their Amended Complaint, is insufficient to ground a plausible claim for relief under the applicable pleading standards.  Specifically, Plaintiffs fail to plead facts to support their allegation that BMC had knowledge of the unpaid work they claim to have performed.  Because BMC has no obligation to pay for work of which it is not aware, this defect is fatal to Plaintiffs' claims.  In the alternative, Plaintiffs Manning, Rivers, and Williams' FLSA claims are precluded by federal labor law because each Plaintiff admits that she is covered by a collective bargaining agreement that must be interpreted to resolve her claims.

In addition, the District Court properly retained jurisdiction over, and dismissed, Plaintiffs' common law claims.  Even after dismissing the claims that conferred federal jurisdiction with respect to Plaintiffs' state law claims, the District Court's exercise of supplemental jurisdiction with respect to these claims was well within its discretion under 28 U.S.C. § 1367.  Dismissal of the common law claims was appropriate because Plaintiffs failed to plead any facts to support them – each of Plaintiffs' claims centers on an alleged promise by BMC to pay them in a certain way, yet Plaintiffs have persistently refused to plead any information about that promise.   In the alternative, dismissal of the common law

7

claims should be affirmed because they are preempted by Plaintiffs' statutory claims.

Regardless of this Court's decision with respect to the counts of Plaintiffs' Amended Complaint, the District Court's decision striking Plaintiffs' class and collective action claims should be affirmed. Plaintiffs have failed to plead those claims adequately as required under *Twombly* and *Iqbal*, and their proposed class definition in the Amended Complaint is so broad that such a class, if certified, would be unmanageable.

Finally, the District Court did not abuse its discretion in denying Plaintiffs' leave to amend their Complaint for a second time. Plaintiffs had more than sufficient opportunity to cure the deficiencies in their allegations, but failed even to make a colorable effort to substantiate their claims. The record reflects that Plaintiffs and their counsel have made a deliberate choice to stand by their generic, boilerplate complaint, rather than be put to the burden of pleading facts that are specific to the circumstances of the parties to this case. Accordingly, dismissal of Plaintiffs' claims with prejudice was appropriate and by no measure an abuse of discretion.

# ARGUMENT

## I. PLAINTIFFS FAIL TO ASSERT FACTS SUFFICIENT TO SATISFY THE APPLICABLE PLEADING STANDARDS

Plaintiffs' primary argument on appeal is that the District Court erred in holding that their claims were insufficiently pleaded. As Plaintiffs acknowledge, the claims asserted in their Amended Complaint are subject to the pleading standard established by Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Pls.' Br. 19-20. To meet the standard established by this rule, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While "detailed factual allegations" are not necessary for a complaint to survive a motion to dismiss, a complaint must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotations omitted). These refinements to the Rule 8(a)(2) standard are expressly intended to prevent "a plaintiff with a

9

largely groundless claim [from] be[ing] allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 558 (internal quotations and citations omitted).

In light of the Supreme Court's holdings in *Twombly* and *Iqbal*, "[t]wo underlying principles guide [] assessment of the adequacy of the plaintiffs' pleadings." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). First, a court must evaluate the sufficiency of a complaint by looking to the well-pleaded factual allegations in the complaint, recognizing that legal conclusions couched as factual allegations are to be given no credence and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See id*. (quoting *Iqbal*, 556 U.S. at 678). Second, "only a complaint that states a <u>plausible</u> claim for relief survives a motion to dismiss." *Id.* at 268 (emphasis added). To meet this plausibility standard, the well-pleaded factual allegations in a plaintiff's complaint must "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

### A. The District Court Correctly Held That Plaintiffs' Factual Allegations Are Insufficient to Make Their FLSA Claims Plausible

Plaintiffs attack the District Court's decision with respect to their FLSA claims on three primary grounds. First, they argue that this Court's decision in

10

*Pruell v. Caritas Christi*, 678 F.3d 10 (1st Cir. 2012) ("*Pruell II*"), dictates that

their claims are sufficient.  That argument is easily disposed of.   Other than

finding that the plaintiffs' claims in that case were <u>not</u> sufficient, the *Pruell II*

decision does not address the level of factual support required to plead an FLSA

claim pursuant to *Twombly* and *Iqbal*.  *Id*. at 14.  Indeed, the Court expressly left it

to the District Court to define on remand the precise details that the plaintiffs must

provide to sufficiently allege their claims.  *Id*. at 15.

    Second, Plaintiffs argue that they are not required to plead that BMC had

actual or constructive knowledge of the time they allegedly worked off-the-clock.

Under the FLSA, an employer is only responsible for overtime payments for work

time of which it is aware.  *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp.

2d 243, 253 (W.D.N.Y. 2010) ("Under the FLSA, Plaintiffs would be required to

show that Defendants had actual or constructive notice of the employee's off-the-

clock work.") (citing *Davis v. Food Lion*, 792 F.2d 1274, 1277 (4th Cir. 1986)).

The Amended Complaint attempts to show the requisite knowledge by attributing a

number of statements and actions to "managers" without providing any

information as to the identity of those individuals, whether they actually constitute

management, or when and to whom such statements were allegedly made.  *See*,

*e.g.*, R.A. 347, ¶ 105 ("Plaintiffs and Class Members had conversations with

defendants' managers in which they discussed how they were working through

11

their meal periods and were not getting paid for such work."); R.A. 347, ¶ 106

("When questioned . . . the defendants affirmatively stated that the employees were

being fully paid for the work time for which they were entitled to be paid, even

though defendants knew compensable work time was being excluded from the

employees' pay. Such conversations occurred with Plaintiffs and Class Members

on a number of occasions."). Each of these allegations must be disregarded as

legal conclusions "couched as [] factual allegation[s]." *Twombly*, 550 U.S. at 555;

*see also* Pls.' Add., 16 (asking, with respect to Plaintiffs' allegation that

"defendants' mangers" were aware of off-the-clock work, "Who are these

unspecified 'managers'? Are they the same or different for each putative plaintiff?

When and with whom did these alleged conversations take place?"). Plaintiffs'

suggestion that all of the employees they seek to represent performed unpaid

overtime at the direction of unspecified "managers" is exactly the type of

aspirational pleading that fails to meet the *Twombly* standard and demands

dismissal.

　　　　Although Plaintiffs acknowledge that employer knowledge of time worked

is an element of an FLSA claim, they argue that this element is, for reasons they

fail to explain, exempt from the pleading requirements that apply to every other

element of their claims. Plaintiffs claim that "most courts hold it is not necessary

to plead such knowledge in order to state a claim," but the case law they cite does

not support that proposition. The only case they cite that even addresses the requirement of showing employer knowledge is *Burroughs v. MGC Services, Inc*., 2009 WL 959961, at *5 (W.D. Pa.), in which the court determined with virtually no analysis that, "[i]n light of the liberal pleading standards of Fed. R. Civ. P. 8(a), . . . Plaintiff's complaint adequately pleads claims against Defendants for violations of the FLSA . . . ."). The remainder of the cases they cite simply do not address the issue for which they are cited. *See* Pls.' Br., 27 (citing *Sec'y of Labor v. Labbe*, 319 Fed. Appx. 761, 763 (11th Cir. 2008); *Martinez v. Regency Janitorial Svcs., Inc.*, 2011 WL 4374458, at *3 (E.D. Wisc.); *Anish v. Nat'l Sec. Corp.*, 2010 WL 4065433, at *2 (S.D. Fla.)). The District Court correctly held that Plaintiffs failed to adequately plead this element of their FLSA claim, and its decision should be affirmed.

Third, Plaintiffs attack the District Court's alternate holding with respect to the sufficiency of their FLSA claims by stating that the court erred in finding "that defendants could not be liable for work performed unless the work was required by defendants." Pls.' Br., 33. In so doing, Plaintiffs overstate the importance of that particular phrase to the District Court's dismissal of their claims. The core of the District Court's holding simply is that Plaintiffs' pleadings fail to take account of the fact that not all activities performed during meal breaks are compensable work. *Id*.; *see also Henson v. Pulaski Cnty. Sherrif Dep't*, 6 F.3d 531, 537 (8th Cir. 1993)

13

(compensation only due to employees if "the active or inactive duties [they perform during] . . . their meal breaks [are] predominantly for the benefit of [defendant]"); *Summers v. Howard Univ.*, 127 F. Supp. 2d 27, 33 (D.D.C. 2000) (stating that "a majority of circuits addressing this issue have held that an employee engages in work during a meal period if he performs activity predominantly for the benefit of the employer" and collecting cases). Plaintiffs try to circumvent their obligation to plead facts supporting their assertion that the activities they performed were, in fact, compensable by claiming that those activities were "requested" by BMC, but they fail to provide a single example of such a request, and their wholly conclusory allegations fail to demonstrate in any other fashion that the work they claim to have performed was primarily for BMC's benefit such that it counts as compensable time. Pls.' Add., 16. Accordingly, the District Court's dismissal of their FLSA claim on this ground was appropriate.

**B.    Plaintiffs' Claims Against Individual Defendants Elaine Ullian and James Canavan Fail to Satisfy the *Twombly* and *Iqbal* Pleading Standards**

The District Court did not err in dismissing Plaintiffs' claims against individual defendants Elaine Ullian, BMC's former President and CEO, and James Canavan, BMC's former Director of Human Resource Operations.[4] Plaintiffs

---

[4] In all three versions of their Complaint, Plaintiffs incorrectly identified Mr. Canavan as BMC's "Senior Human Resource Director." R.A. 338, ¶ 68; R.A. 27,

14

argue that the FLSA's definition of the term "employer" is broad, but they ignore this Court's admonition that the definition's scope must be balanced against other fundamental legal principles: "individuals ordinarily are shielded from personal liability when they do business in a corporate form, and that it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA." *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir. 1998).

As the District Court recognized, First Circuit law with respect to individual liability under the FLSA has balanced these principles by requiring a close relationship between the alleged FLSA violation and the decisions of an individual defendant. *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (individual liability appropriate where corporate officer "was instrumental in 'causing' the corporation to violate the FLSA"); *Baystate*, 163 F.3d at 678 (individual liability analysis "focus[es] on the role played by the corporate officers in causing the corporation to undercompensate employees"). There can be no individual liability "[i]n the absence of a <u>direct</u> relationship between the corporate officers' decision and the FLSA violation at issue . . . ." *Solis v. Velocity Express, Inc.*, 2010 WL 2990293, at *6 (D. Or.) (citing *Baystate*, 163 F.3d at 678) (emphasis added).

---

¶ 51; *see also* Complaint, *Manning v. Boston Medical Center Corp.*, No. 09-cv-11724 (D. Mass.) (docket no. 1).

15

Plaintiffs' allegations – including the ones that they specifically cite in their brief – at most relate to the individual defendants' general supervisory duties. *See* Pl. Br. at 47 (citing allegations from Amended Complaint stating that "Elaine Ullian was President and CEO of BMC and James Canavan was the Senior Human Resources Director"; that "Ullian had operational control of BMC"; that "Canavan had centralized control over the human resources functions of BMC"; and that both Individual Defendants "had the ability to set policy and make authoritative decisions concerning . . . . system-wide policies"). In addition to being entirely conclusory, these allegations are irrelevant to the individual liability analysis and therefore fail to support Plaintiffs' claims. *See Baystate*, 163 F.3d at 678 ("routine supervisory and administrative responsibilities as non-owners of the business" including hiring, supervising, and paying workers not sufficient to give rise to individual liability).

Plaintiffs' only other allegations against the Individual Defendants rest on the false logic that because the Individual Defendants have "authority" over BMC's human resources and other business functions, they must have been "actively involved" in the decisions at issue in this case. *See* R.A. 338, ¶ 64 ("Due in part to her role as President and CEO, Ms. Ullian actively ensured defendants' compliance or non-compliance with federal law, including the requirements of the FLSA."); R.A. 338, ¶ 65 ("Ms. Ullian had the authority to, and does, make

16

decisions that concern education and training functions across BMC."); R.A. 339, ¶ 74 ("Due in part to his role in overseeing human resources, training and education, and payroll and commission services, in concert with others, Mr. Canavan actively ensured defendants' compliance or non-compliance with federal law, including the requirements of the FLSA.").  These allegations are not entitled to a presumption of truth, and the claims against the individual defendants cannot survive.  *See Iqbal*, 556 U.S. at 677; *Twombly*, 550 U.S. at 555.

In *Iqbal*, the Supreme Court dismissed claims against the government officials individually named in a complaint because the pleadings contained insufficient facts to tie them to the alleged wrongdoing attributed to the entities they oversaw.  *See* 556 U.S. at 682.   Here, Plaintiffs similarly identify no facts that could tie the individual defendants to any alleged wrongdoing by BMC.  Plaintiffs' allegations against BMC's senior officers are virtually identical to other claims that have been dismissed under the *Twombly* and *Iqbal* standard in courts around the country (including in other cases litigated by Plaintiffs' counsel).  *See*, *e.g.*, *Attanasio v. Cmty. Health Sys., Inc.*, 2012 WL 1038718, at *6 (M.D. Pa.) (dismissing similar claims against individual defendants and stating that "[s]pecific averments, showing that a defendant has actually been involved in the conduct being used to implicate the employer-employee relationship, are necessary"); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 2011 WL 321186, at *3

(S.D.N.Y.) (finding "there is no basis for personal liability" in virtually identical case litigated by Plaintiffs' counsel); *Tracy v. NVR, Inc.*, 2009 WL 3153150,  at *5-6 (W.D.N.Y.) (citing *Iqbal* and denying motion to amend complaint to add individual defendants as futile because "upon careful analysis, the complaint asserts little more than because [one] was Chairman and [another] was President of [the corporate defendant], then each must have had authority to take the actions that comprise the [test for employer status under the FLSA], and that because each had the authority to take those actions, then each must have in fact taken those actions"), *aff'd* 2009 WL 3647862 (W.D.N.Y.).[5]  The same result should obtain here, and this Court should affirm the dismissal of Ms. Ullian and Mr. Canavan from the action.

### C.    Dismissal of Plaintiffs' Common Law Claims Should Be Affirmed

#### 1.    The District Court Correctly Retained Jurisdiction Over the Common Law Claims

Plaintiffs argue that the District Court erred in retaining jurisdiction over, and should have remanded, the common law claims of putative non-union

---

[5] In *Tracy*, the District Court also rejected the plaintiffs' attempt to pursue claims against a senior human resources officer as an individual defendant.  The court held that the plaintiffs' "boilerplate allegations that [the officer met] the various prongs of the [FLSA's] economic reality test stated solely upon information and belief and without any supporting details" were "insufficient to raise plaintiffs' right to relief 'above a speculative level' with respect to that individual's liability as an employer under the FLSA."  2009 WL 3647862, at *5-6.

18

plaintiffs after the court dismissed the state law claims of union members on §

301 preemption grounds. Pls.' Br., 48-50. It is well established, however, that

once federal jurisdiction is established as to one claim in a complaint, the District

Court may, at its discretion, exercise supplemental jurisdiction over remaining

state law claims pursuant to 28 U.S.C. § 1367, even if the foundational claim for

purposes of subject-matter jurisdiction is dismissed. *Carlsbad Tech., Inc. v. HIF

Bio, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866-67 (2009) ("A district court's

decision whether to exercise [supplemental] jurisdiction after dismissing every

claim over which it had original jurisdiction is purely discretionary. As a result,

the district court's exercise of its discretion under § 1367(c) is not a jurisdictional

matter.") (internal quotations and citations omitted); *Rodriguez v. Doral Mortg.

Co.*, 57 F.3d 1168, 1177 (1st Cir. 1995) ("[A] federal court may retain jurisdiction

over state-law claims notwithstanding the early demise of all foundational federal

claims. . . . [T]he mere fact that [the federal claim] ultimately fails on the merits

does not, by itself, require that all pendent state-law claims be jettisoned.") The

plain language of the statute extends supplemental jurisdiction to the claims of

other parties in the lawsuit as well. 28 U.S.C. § 1367 ("supplemental jurisdiction

shall include claims that involve the joinder or intervention of additional parties").

Once the District Court established subject-matter jurisdiction over

Plaintiffs' claims, its order to Plaintiffs to plead their claims in a single complaint

19

was an entirely proper exercise of its case management authority.  *See Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 172-73 (1989) ("courts traditionally have exercised considerable authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (internal quotations omitted).  There is no question that Plaintiffs' federal law and state law actions contained virtually identical allegations and identical parties, and therefore consolidation pursuant to Fed. R. Civ. P. 42 would have been proper; the District Court's order had precisely that effect.  Courts also possess the authority to impose reasonable conditions upon the allowance of an amended complaint.  *See United States v. United States Trust Co.*, 106 F.R.D. 474, 476 (D. Mass. 1985) ("the Court can impose reasonable conditions upon plaintiff with the allowance of a complaint").  To the extent that Plaintiffs argue that the Court erred by electing not to formally consolidate the actions but instead ordering them to file a consolidated complaint, they elevate form above substance and ignore the District Court's substantial discretion with respect to efficient case management.

### 2.  The District Court Properly Dismissed the State Law Claims

In addition, the non-union Plaintiffs' common law claims would fail because they are unsupported with factual allegations sufficient to meet the *Twombly* standard.  Even under the more lenient standard that preceded *Twombly*, "to state a claim for breach of contract, a plaintiff [was required to] allege, at a minimum, that

20

there was a valid contract, that the defendant breached its duties under the

contractual agreement, and that the breach caused the plaintiff damage."

*Moghaddam v. Dunkin' Donuts, Inc.*, 295 F. Supp. 2d 136, 139 (D. Mass. 2003)

(internal quotations omitted).  Plaintiffs' Amended Complaint asserts two separate

claims for breach of an unidentified express contract (Counts II and III), as well as

a claim for breach of an implied contract (Count IV).  Plaintiffs, however, do

nothing to substantiate the assertion that they have any express or implied contract

with BMC, and instead merely beg the question with a conclusory allegation that

"Defendants, through its [sic] management, recruiters and/or Human Resource

employees, entered into express and implied contracts with Plaintiffs and Class

Members that were explicitly intended to order and govern the employment

relationship between defendants and Plaintiffs and Class Members.  Specifically,

by hiring plaintiffs, defendants entered into an employment contract with

defendants."  R.A. 353, ¶ 142.

Plaintiffs neglect even to specify whether the express contract they alleged is

oral or written.  They make no allegations describing the circumstances under

which the contract allegedly was entered into, the parties to this agreement, the

specific "management, recruiters and/or Human Resource employees" who

negotiated the alleged contract, or even the specific terms they claim were

breached.  Plaintiffs do not specify whether the alleged contracts were individual

agreements with BMC or a broader agreement.  Without any substantiation of these legal conclusions masquerading as allegations of fact, the Amended Complaint falls short of pleading facts sufficient to give rise to a plausible inference that a contract existed, much less that Defendants breached such an agreement.  *See Nakahata*, 2011 WL 321186, at *6 (dismissing virtually identical contract claims because they "are nothing more than bald assertions"); *Wolman v. Catholic Health Sys. of Long Island, Inc*., 2011 WL 1741905, at *4 (E.D.N.Y) (ordering *sua sponte* more definite statement or voluntary dismissal of contract claims where plaintiffs failed to identify who entered into contracts, or when they were formed).  In fact, at the hearing on the motion to dismiss, when asked directly by the District Court to identify any basis for their contracts, they were unable to do so.  R.A. 547-550.

In addition, the Amended Complaint states that Plaintiffs assert their common law claims only on behalf of non-union employees, but it does not expressly disclaim that they are relying on the collective bargaining agreements in effect at BMC as the basis of their contract claims.  R.A. 331 n.1.  As the District Court recognized, to the extent that Plaintiffs' vaguely pleaded contract claims do refer to or rely on such collective bargaining agreements – even if asserted by non-union members – they are preempted.  *See* Pls.' Add., 21; *see also Cavallaro v. UMass Memorial Healthcare, Inc*., 678 F.3d 1, 10 (1st Cir. 2012) (finding similar

22

contract claims to be preempted pursuant to § 301). The Court would, at the very least, be required to address the coverage clauses of the CBAs. Accordingly, the District Court's dismissal of those claims should be affirmed.

## II. THE FLSA AND MASSACHUSETTS WAGE STATUTES PREEMPT PLAINTIFFS' DERIVATIVE COMMON LAW CLAIMS

Plaintiffs expressly premise their common law claims, including their contract claims, on violations of various state and federal statutes concerning wage payment.[6] *See* R.A. 355, ¶ 150 ("[D]efendants' implied contract with Plaintiffs and Class Members embodied all binding legal requirements concerning the payment of such wages to Plaintiffs and Class Members that were in force at the time of that contract."); R.A. 355, ¶152 ("Each such contract also included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable Massachusetts and federal law, including payment for all time worked including applicable premium pay."). These claims are preempted in

---

[6] Plaintiffs argue that these claims do "not seek to enforce rights created exclusively by the FLSA or state statutes . . . ." Pl. Br. 10. First, as explained herein, this statement contradicts the Amended Complaint itself. Second, the District Court questioned Plaintiffs' counsel on this point at oral argument, and he could identify no basis for these claims other than that someone at BMC allegedly said "yep, come work for us, we're going to pay you" – as required by state and federal statute. R.A. 547-550. Plaintiffs also argue "that, in any event, those statutes did not provide the exclusive method of enforcing rights created thereunder." Pl. Br. 10. As explained above, Plaintiffs' statement is incorrect.

23

their entirety by the statutes on which they rely – namely, the FLSA and

Massachusetts wage statutes.

The District Court thus properly found that "to the extent plaintiffs bring

their common law claims to recover overtime pay allegedly due, they are

preempted by the FLSA" – a finding that Plaintiffs do not challenge.[7]  Pls.' Add.

9, n.4.  The court did not, however, address Defendants' argument that Plaintiffs'

common law claims are also preempted by the Massachusetts Wage Act, Mass.

Gen. Laws ch. 149, § 148, to the extent that they seek to recover <u>straight time</u> pay

---

[7] Other courts similarly have held that common law counts that depend on establishing a statutory violation of the FLSA are preempted by that statute, on the grounds that the FLSA provides an elaborate enforcement scheme that precludes duplicative common law claims with potentially conflicting remedies or statutes of limitations.  *See*, *e.g.*, *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194-95 (4th Cir. 2007) (holding plaintiffs' breach of contract, negligence, and fraud claims precluded by FLSA's exclusive enforcement scheme); *Chen v. Street Beat Sportswear, Inc.*, 364 F. Supp. 2d 269, 293 (E.D.N.Y. 2005) (holding that FLSA preempted plaintiffs' negligence claims under New York law); *Nakahata*, 2011 WL 321186, at *3 (finding in virtually identical hospital overtime case that plaintiffs' "state law claims are duplicative of the statutory claims and preempted by the FLSA").  As these courts have recognized, where, as here, plaintiffs premise their common law claims on the exact same set of facts as their statutory claims, the statutory scheme preempts the common law claims – even where the claims make no reference to the FLSA.  *Bouthner v. Cleveland Constr., Inc.*, 2011 WL 2976868 (D. Md.) (although common law claim made no reference to FLSA, it was preempted where claim sought wages mandated by FLSA).  The same analysis applies to the dismissal of common law claims based on FLSA preemption in the class action context.  *See Anderson*, 508 F.3d at 182; *Sorenson v. CHT Corp.*, 2004 WL 442638, at *1 (N.D. Ill.); *Morgan v. SpeakEasy, LLC*, 2007 WL 2757170, at *1 (N.D. Ill.); *Moeck v. Gray Supply Corp.*, 2006 WL 42368, at *1 (D.N.J.).  For the same reason, the Massachusetts law governing overtime – the Massachusetts Minimum Wage Law, Mass. Gen. Laws ch. 151, § 1A – preempts Plaintiffs' common law claims to the extent they seek to recover overtime pay allegedly due.

allegedly due.  This Court "may affirm an order of dismissal on any ground made apparent by the record," regardless of whether it was relied upon or addressed by the District Court.  *Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 8 (1st Cir. 2007) (citing *InterGen N.V. v. Grina*, 344 F.3d 134, 141 (1st Cir. 2003)); *see also Watterson v. Page*, 987 F.2d 1, 7 n.3 (1st Cir. 1993) (Court "free to affirm on any independently sufficient ground . . . . especially where review is de novo"); *Papex Int'l Brokers Ltd. v. Chase Manhattan Bank, N.A.*, 821 F.2d 883, 885 (1st Cir. 1987) ("Although the district court did not reach this issue, we may affirm its dismissal on any ground apparent from the record, especially when the parties have had the opportunity to develop the issue both before the district court and this Court.").  Here, the parties fully briefed this issue before the District Court, and this Court may therefore affirm the District Court's dismissal of Plaintiffs' common law claims with prejudice on the alternative grounds that those claims are preempted in their entirety, regardless of whether Plaintiffs seek through those claims to recover straight time or overtime wages.

First, as the District Court held in its March 10 Order, both the Minimum Wage Law and Wage Act contain exemptions for hospitals that preclude recovery against Defendants.[8]  *See* Defs.' Add., 5.  Plaintiffs cannot circumvent that Order

---

[8] Plaintiffs have not challenged this portion of the District Court's Order.

simply by repleading those dismissed claims as contract claims, as they attempt to do in the Amended Complaint. Indeed, Plaintiffs specifically contend that the repleaded contract claims are based on state wage laws, stating that the alleged contracts "embodied all binding legal requirements concerning the payment of such wages" and that "defendants agreed to fulfill all of their obligations pursuant to applicable Massachusetts and federal law, including payment for all time worked." R.A. 355, ¶¶ 150, 152. In its March 10 Order, the District Court found that BMC did not have an obligation under those statutes because it is exempt from their coverage. Plaintiffs' claim is barred regardless of whether they frame their claim as arising directly under those statutes or under agreements that incorporate the statutes' provisions.

Second, common law claims – including contract claims – founded on duties that are "wholly the creation of statute" are preempted under Massachusetts law. *Sch. Comm. of Boston v. Reilly*, 362 Mass. 334, 338-39 (1972). "Where a statute has been enacted seemingly intended to cover the whole subject to which it relates, including a remedy for its infraction, other provisions of the common law, including such as are remedial in nature, are thereby superseded." *Sch. Comm. v. City of Lowell*, 265 Mass. 353, 356 (1928); *see also Dobin v. CIOView Corp.*, 2003 WL 22454602, at *9 (Mass. Super. Ct.) (where Legislature "has provided a statutory cause of action to an at-will employee who has been discharged for

exercising [] statutory rights, there is no need to add a common law remedy").  In

several recent cases, courts have applied this reasoning and dismissed common law

claims that are premised on violations of Massachusetts wage statutes.[9]  *See, e.g.,*

*Mouiny v. Comm. Flats Dev. Corp.*, No. SUCV-2006-1115-BLS1 (Mass. Super.

Ct. Aug. 20, 2008) (Gants, J.), pp. 14-15; *Masiello, et al. v. Marriott Int'l, Inc.*,

2011 Mass. Super. LEXIS 59, at *7 (Mass. Super. Ct.) (Lauriat, J).  As in this case,

the common law claims in those cases all derived from and improperly duplicated

wage claims, and in each of those cases the court dismissed each of the common

law claims premised on alleged violations of the state wage statutes.  Here,

Plaintiffs' common law claims, which are expressly premised on statutory wage

violations, fail for the same reason.  Thus, this Court should affirm the District

Court's dismissal of Plaintiffs' common law claims in their entirety and with

prejudice on the grounds that those claims are preempted by the FLSA and

Massachusetts wage laws.

## III.    PLAINTIFFS' FLSA CLAIM IS PRECLUDED BY FEDERAL LABOR LAW

The District Court did not address Defendants' argument that Plaintiffs'

FLSA claims must be dismissed because they should be pursued through the

grievance and arbitration provisions of the CBAs before litigation in this Court.

---

[9] Each of these cases alleged violations of the Massachusetts Tip Statute, Mass. Gen. Laws ch. 149, § 152A, which contains the same enforcement scheme and penalties as the Wage Act.  *See* Mass. Gen. Laws ch. 149, §§ 27C, 150.

This Court, however, can and should affirm the District Court's dismissal with prejudice of Plaintiffs' FLSA claims with respect to union members on this ground. In two separate complaints, Plaintiffs brought parallel state and federal statutory wage claims. In their Amended Complaint, Plaintiffs seek to represent a collective consisting almost entirely of unionized employees whose terms and conditions of employment are governed by CBAs that contain multiple and complicated wage and hour provisions reflecting a negotiated regimen to deal with complex issues of wage payment in a hospital setting. The District Court dismissed the state law claims in its March 10 Order because their resolution required interpretation of the CBAs, and those claims therefore were preempted by § 301. *See* Pls.' Add., 11. The parallel federal claims suffer from a parallel defect. Because they, too, require interpretation of the CBAs, litigation under the FLSA prior to arbitration would interfere with the administration of the CBAs specifically, and with uniform interpretation of collective bargaining agreements generally. [10]

---

[10] *Tamburello v. Comm-Tract Corp.*, 67 F.3d 973, 978-79 (1st Cir. 1995), illustrates this point. In that case, this Court held that claims pursuant to the federal RICO statute were preempted by federal labor law where the alleged predicate racketeering act constituted an unfair labor practice in violation of the NLRA. *Id.* (dismissing RICO claims as preempted where adjudication of claim would require "a reviewing court . . . to decide whether some portion of the defendant's conduct violated the federal labor laws"). The Court noted that although the preemption doctrine invoked "was originally concerned only with

## A.    The FLSA Was Not Intended to Impair Collective Bargaining

For unionized employees, collective bargaining is the nation's preferred method of workplace governance.  Section 1 of the National Labor Relations Act ("NLRA") declares it "to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce . . . by encouraging the practice and procedure of collective bargaining."  29 U.S.C. § 151.  Wages and hours of work are the fundamental elements of "mandatory" collective bargaining for unionized employees, *see* 29 U.S.C. § 158(d), and the core principle of the NLRA is that employee wages should be regulated by collective bargaining, not by legislation.  *See id.*  Collective bargaining produces a consensual settlement of wage and hour issues, which is guaranteed by a CBA, and which is enforced through grievance and arbitration procedures.  As the Supreme Court has stated: "[A]rbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578 (1960).

The FLSA was not intended to displace the bargaining regime established by the NLRA.  Rather, the FLSA was intended to provide a safety net to protect unrepresented employees who lacked sufficient bargaining power to fend for themselves.  The legislative history of the FLSA confirms that it was not intended

---

federal supremacy over conflicting state laws, it has been extended to cover the relationship between the NLRA and other federal statutes."  *Id*. at 976 n.2.

to disrupt CBAs reached through the NLRA bargaining process.[11]  To the extent

the FLSA reflects a judgment about union-represented workforces, it was intended

to provide a floor to support – not supplant – collective bargaining.  *See generally*

Clyde W. Summers, *Labor Law as the Century Turns: A Changing of the Guard*,

67 Neb. L. Rev. 7, 8-9 (1988); J. Huthmacher, *Senator Robert F. Wagner and the*

*Rise of Urban Liberalism*, 203-04 (1968).[12]

_____

[11] *See*, *e.g.*, Senate Report No. 884, 75th Cong., 1st Sess., pp. 3-4 (July 6, 1937) ("The right of individual or collective employees to bargain with their employers concerning wages and hours is recognized and encouraged by this bill.  It is not intended that this law shall invade the right of employer and employee to fix their own contracts of employment, wherever there can be any real, genuine bargaining between them.  It is only those low-wage and long-working-hour industrial workers, who are the helpless victims of their own bargaining weakness, that this bill seeks to assist to obtain a minimum wage."); 82 Cong. Rec. 1395 (Dec. 13, 1937) ("Mr. RANDOLPH.  It is not concerned with that fortunate majority of the laboring classes whose collective bargaining power is sufficiently potent to insure the preservation of their industrial rights.  But it is concerned with those millions in industry who are unprotected and unorganized."); 83 Cong. Rec. 7285 (May 23, 1938) ("Mr. CURLEY.  There is no conflict of jurisdiction under the provisions of this fair standards of labor bill, and the existing labor organizations of this country.  The bill concerns only of relieving the paralysis which, at present, shackles misery and poverty to millions of heads of families, who are underpaid and causing a colossal financial loss in purchasing power because of existing deplorable conditions."); 83 Cong. Rec. 7291 (May 23, 1938) ("Mr. ALLEN.  The bill does not affect organized labor, but those 5,000,000 American working men and women who have not yet been benefited by organized labor.").

[12] *See also Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1175-76 (7th Cir. 1987) (reviewing the legislative history of the FLSA and concluding that the FLSA was passed, in part, because "unions' efforts to negotiate for overtime provisions in collective bargaining agreements would be undermined if competing, non-union firms were free to hire workers willing to work long hours without overtime").

### B.     The FLSA by Its Terms Accommodates the Bargaining Process

The FLSA reflects this deference to the bargaining process.  While the

FLSA requires employers to pay at least the minimum wage for all "hours"

worked, 29 U.S.C. § 206(a), the statute contains no definition of "work."

Accordingly, under the FLSA employers and employees may make "reasonable

provisions of contract [to guide] the computation of work hours where precisely

accurate computation is difficult or impossible."  *Tennessee Coal, Iron & Ry. Co.*

*v. Muscoda Local No. 123*, 321 U.S. 590 (1944).  *See also Skidmore v. Swift &*

*Co.*, 323 U.S. 134, 136-37 (1944).  As long as the agreement is consistent with

fundamental FLSA principles – *i.e.*, minimum wage and overtime for hours over

forty per week – "employers and employees may resolve whether certain activity is

'work' through a collective bargaining agreement."  *Leahy v. City of Chicago,*

*Illinois*, 96 F.3d 228, 232 (7th Cir. 1996).  Thus, where a CBA defines "work" and

is not inconsistent with FLSA rules, a plaintiff is required first to resort to the

grievance and arbitration provisions set forth in the CBA to litigate any alleged

failure to pay wages for hours worked.[13]  *Id.*

---

[13] Three rationales justify this rule.  First, it is appropriate for employers and
employees who define compensable work in their CBA to resolve disputes about
the issue through the CBA's grievance procedure.  *Jonites v. Exelon Corp.*, No. 05
C 4234, 2007 U.S. Dist. LEXIS 55400 (N.D. Ill.).  Second, an arbitrator is likely to
have a better understanding of the meaning of "work" in the context of a specific
bargaining relationship than a court would have.  *Leahy*, 96 F.3d 228.  Third, an
arbitrator would be required to comply with the FLSA in deciding the contract

Here, as in *Leahy*, key aspects of Plaintiffs' FLSA claims must be resolved through the grievance and arbitration provisions of the CBAs. For example, Plaintiffs claim that BMC violated the FLSA by not paying them for all "hours" worked. As in *Leahy*, however, the terms and conditions of Plaintiffs' employment are governed by the terms of the respective CBAs between BMC and the unions representing its employees. In addition, as in *Leahy*, all of the CBAs define "work" by stipulating the circumstances for which employees will be paid and define meal periods as non-working time.[14] And, again as in *Leahy*, all of the CBAs require BMC to pay employees for time spent working during breaks, in some cases requiring BMC to pay time-and-a-half for such time.[15] All of the

---

issue, because otherwise the arbitrator's decision could be set aside for "manifest disregard" of the law since an arbitrator may not direct the parties to violate the law. *Jonites v. Exelon Corp.*, 522 F.3d 721 (7th Cir. 2008).

[14] See CBA between MNA and BMC, Art. IX, Section 4; CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 9, Section 4; CBA between AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Sections 2 and 12; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. 17, Section 3; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art. VIII, Sections 2 and 12. R.A. 63, 116, 162, 164, 214, 245, 248.

[15] *See* CBA between MNA and BMC, Art. XII, Section 1(b); CBA between 1199SEIU United Healthcare Workers East and BMC (Registered Nurses), Art. 13, Section 1(b); CBA between AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8, Section 11; CBA between 1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art. 18, Section. 1; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art. VIII, Section 11. R.A. 69, 122, 163-164, 214, 247.

CBAs provide for grievance and arbitration.[16]  Finally, all of the CBAs on their

face comport with the FLSA, requiring BMC to pay its employees more than the

minimum wage in straight-time pay and one-and-a-half times their "regular rate" to

employees who work more than forty hours in a week.[17]   In short, there is no

appreciable difference between this case and *Leahy*, and the grievance and

arbitration provisions of the CBAs bar Plaintiffs' FLSA claims.  *See also Jonites v.*

*Exelon Corp.*, 2007 U.S. Dist. LEXIS 55400 (N.D. Ill.), *aff'd* 522 F.3d 721 (7th

Cir. 2008); *Martin v. Lake Cnty. Sewer Co.*, 269 F.3d 673 (6th Cir. 2001); *Vadino*

*v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990) ("[W]hile claims resting on

the language of section 7(a) [of the FLSA] are clearly cognizable under that

section, we believe that claims which rest on interpretations of the underlying

collective bargaining agreement must be resolved pursuant to the procedures

---

[16] *See* CBA between MNA and BMC, Art. V; CBA between 1199SEIU United
Healthcare Workers East and BMC (Registered Nurses), Art. 5; CBA between
AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 5; CBA between
1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art.
6; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance), Art.
V.  R.A. 59-60, 113-114, 202, 237-241.

[17] *See* CBA between MNA and BMC, Art. XII; CBA between 1199SEIU United
Healthcare Workers East and BMC (Registered Nurses), Art. 13; CBA between
AFSCME/AFL-CIO/CLC and BMC (Unified Contract), Art. 8; CBA between
1199SEIU United Healthcare Workers East and BMC (Skilled Maintenance), Art.
XVIII; CBA between AFSCME/AFL-CIO/CLC and BMC (Skilled Maintenance),
Art. VIII.  R.A. 69, 122, 162-164, 214, 245-248.

contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301.").

### C. Preclusion of Plaintiffs' FLSA Claim Should Result from the Principles that Dictate Preemption of the State Law Claims

Proceeding with the FLSA claims in this case could not be squared with the policy underlying preemption of state law claims by § 301. Section 301 preempts a state law claim "if the resolution of [that] claim depends on the meaning of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988). One of the main rationales for this rule is strong federal policy favoring arbitration of labor disputes. *Allis-Chalmers v. Lueck*, 471 U.S. 202, 219 (1985). "[A]rbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process. They sit to settle . . . disputes that require for their solution knowledge of the custom and practices . . . of a particular industry as reflected in particular agreements." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593 (1960). "A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness . . . as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance." *Lueck*, 471 U.S. at 220. *See also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987).

There is no justifiable reason that litigation of an FLSA claim in similar circumstances would have a lesser impact on grievance procedures. Plaintiffs asserted identical claims under state wage and hour law, and the District Court held that their state law claims were preempted by § 301 because before that court could determine whether BMC did or did not pay its employees for all hours worked, it would first need to interpret the relevant CBA to determine how many hours each employee "worked" and then determine how much the employee should have been paid for those hours. *See* Defs.' Add., 4. Plaintiffs do not challenge this holding. The District Court would have to engage in the same interpretive exercise to resolve Plaintiffs' FLSA claims.

Thus, other federal courts have understood that § 301 preemption of state law claims requires maintaining the primacy of arbitration of contractual disputes and have also rejected FLSA litigation of those same disputes. *See Martin*, 269 F.3d at 679 (holding that FLSA claims requiring interpretation of CBA are precluded by § 301 because "[t]his holding appears to us to be a reasonable accommodation of both statutory schemes"); *Vadino*, 903 F.2d at 266 ("we believe that claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301"); *see also Cameron v. Idearc Media Corp.,* 2011 WL

35

4054864 (D. Mass.), (*aff'd on other grounds*, 685 F.3d 44 (1st. Cir. 2012)) (finding that LMRA precludes claims brought Age Discrimination in Employment Act and Employment Retirement Income Security Act).[18]  The result should be no different here.

### D.    "Waiver" Cases Like *Barrentine* Do Not Require a Different Result

While Plaintiffs did not address Defendants' preclusion argument in their opening brief, they are likely to argue in their reply brief that *Barrentine v. Arkansas-Best Freight Sys.*, *Inc.*, 450 U.S. 728 (1981), requires a different result.  It does not.  *Barrentine* held that the submission of an employee's claim for violation of the FLSA's minimum wage provisions to contractual dispute resolution procedures pursuant to a CBA did not preclude a later lawsuit because "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate" and, thus, "congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation agreement." *Id.* at  740-41 (quotations omitted).  *Barrentine* does not hold that a

---

[18] *See also Johnson v. D.M. Rothman Co., Inc.*,  2012 WL 1788144, at *4 (S.D.N.Y.); *Elswick v. Daniels Elec., Inc.*, 787 F. Supp. 2d 443 (S.D. W.Va. 2011) (FLSA claim that rests on interpretation of underlying collective bargaining agreement must be resolved pursuant to procedures contemplated under LMRA); *Hoops v. Keyspan Energy*, 2011 U.S. Dist. LEXIS 23117, at *17 (E.D.N.Y.) (same); *Nakahata*, 2011 WL 321186, at *4 (same); *Freundt v. Allied Tube & Conduit Corp.*, 2007 U.S. Dist. LEXIS 87852 (N.D. Ill.).

36

claim that an employer did not pay for all hours worked should not be arbitrated under a CBA that is consistent with the FLSA before a plaintiff files suit in court for an alleged FLSA violation. Rather, it merely held that submission of an FLSA claim to arbitration does not preclude a later lawsuit. Unlike *Leahy*, it does not speak to the question of whether labor law principles require arbitration to precede litigation.

Moreover, this Circuit rejected virtually the same argument in *Haggins v. Verizon New England*, *Inc.*, 648 F.3d 50 (1st. Cir. 2011), recognizing the distinction between § 301 preemption and statutory waiver and that "[t]he threshold question in this litigation is 'not the clarity of the purported waiver but the proper scope of the underlying right.'" 648 F.3d at 56 -57 (citing the District Court's decision, *Haggins v. Verizon New England,* 736 F. Supp. 2d 326 (D. Mass. 2010)) ("Before reaching any waiver issue, the court must determine whether a privacy right exists at all. It is this threshold determination that manifestly requires interpretation of the CBA."). BMC recognizes that Plaintiffs have not waived any right to bring FLSA claims in court and does not argue otherwise. Rather, BMC argues that, as in *Haggins* and *Leahy*, Plaintiffs' claim cannot be adjudicated without interpreting the CBA.

## IV. THE DISTRICT COURT PROPERLY STRUCK PLAINTIFFS' CLASS AND COLLECTIVE ALLEGATIONS

As the District Court held, it is clear from the pleadings that the classes that Plaintiffs seek to represent are wholly unworkable. Plaintiffs allege both an FLSA collective pursuant to § 216(b) and a Rule 23 class consisting of all "current and former employees who worked for defendants, were paid hourly and were not paid for all the time they worked including applicable premium pay." R.A. 331, ¶ 5. Plaintiffs admit that this definition includes more than 4,000 employees in more than fifty diverse job positions, from secretaries, to housekeepers, to senior research associates, to sleep technologists, to nurses.[19] R.A. 348, ¶ 111. The Supreme Court recognized long ago that where plaintiffs propose such a patently uncertifiable class, a decision regarding the viability of the proposed can be made

---

[19] *See* R.A. 348-349, ¶ 111 (putative class members subject to alleged meal break policies include, "without limitation, hourly employees working at BMC's facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, transport nurses, nurse aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, nurse aides, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, respiratory technicians, respiratory care specialists, respiratory care practitioners, clinical coordinators, medical assistants, home care nurses, home health aides, clinical case managers, midwives and other health care workers.").

on the pleadings alone. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160

(1982) ("[s]ometimes the issues are plain enough from the pleadings" to show that

class should not be certified).

In an apparent (unsuccessful) attempt to make this massive class –

alternately referred to by the District Court as the "large and diverse prospective

class," "a nebulous block," and "a multifarious conglomerate" – more manageable,

Plaintiffs carve their proposed FLSA class into six subclasses, corresponding to

three different types of allegedly uncompensated work (work during meal breaks,

pre- and post-shift work, and training) and then further subdivided into separate

subclasses for union and non-union employees.  R.A. 349-352, ¶ 116, 127, 137.  In

addition, Plaintiffs seek a Rule 23 class with respect to their common law claims,

which they assert only on behalf of non-union employees.  R.A. 330, ¶ 2 n.1.

None of these putative classes or subclasses, however, is viable, as the District

Court held.  Thus even if Plaintiffs' substantive claims were to survive, their class

claims could not, and this Court should affirm the District Court's dismissal of

those claims from the Amended Complaint.

### A.    Plaintiffs' Class and Collective Allegations Must Meet the Requirements of Rule 8

This Court should affirm the District Court's decision striking Plaintiffs'

collective and class action allegations because they fail to meet the minimum

pleading standards under Rule 8(a).  At the pleadings stage, a plaintiff must plead

specific facts showing an entitlement to relief on a classwide basis.  Since

*Twombly* and *Iqbal* were decided, courts have recognized that and collective class

actions must comply with the pleading requirements of Rule 8(a) to proceed to

class discovery.  *See, e.g., Landry v. Peter Pan Bus Lines, Inc.*, No. 09-11012 (D.

Mass. Nov. 20, 2009) (dismissing class and collective action claims because

complaint "does not set forth factual allegations creating a 'plausible' entitlement

to relief for anyone other than [the individual named plaintiff]"); *Barrus*, 732 F.

Supp. 2d at 255 (striking class allegations where plaintiffs failed to demonstrate in

their complaint that common issues would predominate); *Zhong v. August August*

*Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) ("[W]here a plaintiff brings a

[wage-and-hour] claim for and in behalf of himself and other employees similarly

situated, the complaint should indicate who those other employees are, and allege

facts that would entitle them to relief.") (internal quotations and citation omitted).

Allegations that fail to meet this standard may be stricken from the complaint as

immaterial and impertinent pursuant to Fed. R. Civ. P. 12(f).  *See Bearden v.*

*Honeywell Int'l Inc.*, 2010 WL 1223936, at *9 (M.D. Tenn.) ("[P]ursuant to Rule

12(f), this Court has authority to strike class allegations prior to discovery if the

complaint demonstrates that a class action cannot be maintained.").

     Collective and class action allegations consisting solely of legal conclusions

based on the bare language of the elements of the cause of action do not pass

muster under *Twombly* and *Iqbal*. *See Nicholas v. CMRE Financial Services, Inc.*, 2009 WL 1652275, at *4 (D. N.J. 2009) (granting a motion for more definite statement where plaintiffs made formulaic allegations of the certification requirements). Simply including in a complaint collective and class action allegations that "parrot" the requirements of Fed. R. Civ. P. 23 and § 216(b), as Plaintiffs do here, is insufficient to satisfy the necessary pleading requirements. *Landry*, at 3. Plaintiffs instead must come forward with facts that plausibly support the existence of other employees who have experienced the same harms. Indeed, Plaintiffs' counsel has been warned in other jurisdictions that class allegations must be supported by fact to avoid dismissal. *See Barrus*, 732 F. Supp. 2d at 249 ("[A] class action must satisfy each of the requirements of Rule 23, and the plaintiff must plead more than a simple reiteration of those requirements in conclusory allegations. Instead, the plaintiff should allege facts demonstrating that all of the requirements for bringing a class action are fulfilled.") (quoting 5 Moore et al., Moore's Federal Practice, § 23.60[2])).

Plaintiffs' argument that they should be allowed to take discovery prior to the District Court's ruling on whether a class or collective action should be certified is both disingenuous and an inaccurate statement of the law. This argument is disingenuous because Plaintiffs had already filed their motion to conditionally certify a collective action with respect to their FLSA claims before

41

the District Court ruled on the motion to strike.  Moreover, this argument ignores the law – Plaintiffs must meet the pleading requirement of Rule 8(a) <u>prior</u> to being allowed to take discovery.  Here, class discovery would, as the District Court recognized, be almost impossible to conduct, as Plaintiffs' class is defined so broadly that it includes more than 4,000 employees in more than fifty disparate job classifications.  In cases such as this, courts have recognized that class allegations should be stricken because "no proffered or potential factual development offers any hope of altering th[e] conclusion" that the proposed class cannot satisfy the requirements for class.  *Pilgrim v. Universal Health Card LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *see also, e.g., Thompson v. Merck & Co*., 2004 WL 62710 (E.D. Pa. Jan. 6, 2004) (striking class allegations where "[n]o amount of additional class discovery [would] alter" conclusion that plaintiffs' claims could not meet Rule 23 requirements); *Ross-Randolph v. Allstate Ins. Co*., 2001 WL 36042162 (D. Md.) (striking class allegations and refusing to permit class discovery because "[i]n determining whether a party complies with Rule 23, a court does not have to wait until class certification is sought").

Indeed, allowing discovery to proceed on as few facts as exist in the Amended Complaint would be inconsistent with the policy underlying *Twombly* and *Iqbal*.  In refining the Rule 8 pleading standard, the Supreme Court explained that its purpose in doing so was to prevent claims of marginal merit from

42

squandering the resources of defendants and the courts.  As stated by the Supreme

Court:

> [T]he threat of discovery expense will push cost-conscious defendants
> to settle even anemic cases before reaching those proceedings.
> Probably, then, it is only by taking care to require allegations that
> reach the level suggesting [a *prima facie* claim] that we can hope to
> avoid the potentially enormous expense of discovery in cases with no
> "reasonably founded hope that the discovery process will reveal
> relevant evidence."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (pleading standard

intended to prevent "a plaintiff with a largely groundless claim [from] be[ing]

allowed to take up the time of a number of other people, with the right to do so

representing an *in terrorem* increment of the settlement value") (internal quotations

and citations omitted); *see also Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 549

(N.D. Cal. 2009) ("In *Twombly*, the Court noted the danger of expensive discovery

being triggered by a complaint that fails to allege enough facts 'to raise a

reasonable expectation that discovery will reveal evidence' of liability.").  In short,

meritless class claims should not be permitted to wreak havoc on a defendant in the

form of forcing it to undergo large-scale investigations, litigation, and discovery

when such claims are plainly untenable as a matter of law from the outset.  A

putative class action such as this one, asserted on behalf of a "a multifarious

conglomerate," threatens BMC and the District Court with potential expenditure of

substantial resources. The Amended Complaint simply does not contain sufficient facts to justify such expense.

### B. Plaintiffs' FLSA Allegations Are Insufficient to Establish a Similarly Situated Collective

Plaintiffs' proposed FLSA collective is so broad and diverse that Plaintiffs cannot show that the putative classes are sufficiently similar to permit class treatment. As the District Court found, "[t]he proposed class would consist of individuals who work in different units and locations, work different shifts and schedules, have different supervisors, are entitled to different rates of pay according to divergent schemes, and hold vastly different job positions and functions spanning the health care occupational gamut." R.A. 567-568; *see also* R.A. 348-349, ¶ 111. The Amended Complaint does not, however, contain any facts suggesting that Plaintiffs' individual experiences were shared by these other employees. Indeed, as the District Court stated, "[b]y defining the potential class so broadly, plaintiffs have failed to allege that this proposed nebulous block of potentially over 4,000 plaintiffs are 'similarly situated.'" Pls.' Add., 14.

Plaintiffs attempt to ground their class allegations on purported "policies" that they attempt to define into existence. R.A. 350, ¶ 117 (defining "Unpaid Pre- and Post-Schedule Work Policy" by stating that "[u]nder this policy, defendants suffered or permitted Plaintiffs and Class Members to perform work, predominantly to the benefit of defendants, before and/or after the end of their

44

scheduled shifts.").  First, as the District Court found, "the existence of such 'policies' across a group of putative employees whose job function, hours, and daily tasks share little to no common ground simply is not plausible."  Pls.' Add., 12.  Moreover, Plaintiffs fail to allege any facts regarding these so-called "policies" for even a single job classification.  Pls.' Add., 13.

Nor is Plaintiffs' catch-all allegation that Defendants have "policies . . . of not properly paying employees for all hours worked" sufficient to meet the requisite pleading standard.  R.A. 331, ¶ 7 ("Common questions of law and fact predominate in this action because the claims of all Plaintiffs and Class Members are based on defendants' policies and practice of not properly paying employees for all hours worked including applicable premium pay in violation of the laws of Massachusetts.").[20]  Simply calling an unfounded allegation a "policy and practice," as Plaintiffs have done here, does not make it so.[21]  As the District Court

---

[20] To the extent that Plaintiffs seek certification of a class under Massachusetts wage laws, as this language suggests, they are barred from doing so because the District Court dismissed claims brought under Massachusetts wage laws with prejudice in its March 10 Order, and Plaintiffs have not challenged that finding.

[21] Likewise, Plaintiffs' counsel's professed "investigation" into the industry as a whole does not suffice to provide factual support for the proposition that the putative class of employees at BMC was subject to a uniform unlawful policy meant to deprive them of wages.  *See* R.A. 346, ¶ 96 ("Class Counsel's investigation has confirmed that indeed there is a common practice in the healthcare industry that results in hourly employees not being compensated for all time worked, including overtime compensation.").

45

held, such "utterly conclusory" allegations are insufficient to establish a plausible

claim for class relief.  Pls.' Add., 16.

Unable to actually identify a single "policy," Plaintiffs argue in their brief

that the mere use by BMC of a timekeeping system that allows for auto-deductions

for meal breaks is sufficient not only to pass muster under *Twombly*, but also to

justify certification of the "nebulous block" of putative class members they seek to

represent.  As the District Court held, this argument fails.  Pls.' Add., 13 (citing

*White v. Baptist Mem. Health Care Corp.*, 2011 WL 1883959, at *10 (W.D. Tenn.)

("mere adoption of a system that, by default, deducts meal breaks from its

employees' pay does not constituted a unified policy of FLSA violations capable

of binding together a [collective action].").

### C.    Rule 23 Also Requires More Than Mere Legal Conclusions

In addition to the § 216(b) class they seek with respect to their FLSA claims,

Plaintiffs also seek a Rule 23 class with respect to their contract claims.[22]  These

class claims fail for the same reason that Plaintiffs' individual contract claims fail:

Plaintiffs have not set forth any facts to support them.  Even if Plaintiffs'

individual claims were adequately pleaded, however, their class claims could not

---

[22] Plaintiffs also seek a Rule 23 class with respect to their other common law
claims. For the reasons stated above, the District Court's dismissal of those claims
should be affirmed.  Even if this Court does not affirm the dismissal of those
claims, however, the Court should still affirm the dismissal of the class allegations
for the reasons described in this section.

survive.  There is simply no allegation in the Amended Complaint that even

suggests the existence of a common issue of fact that could permit certification of a

class action.  *See Wal-Mart Stores, Inc., v. Dukes*, --- U.S. ---, 131 S.Ct. 2541,

2551 (2011) (common issue of fact "must be of such a nature that it is capable of

classwide resolution – which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one

stroke").  Indeed, Plaintiffs fail even to define their class in an ascertainable

manner, defining it to include all alleged victims of the alleged wage violations for

which they fail to provide factual support.  *See Kent v. SunAmerica Life Ins. Co.*,

190 F.R.D. 271, 279 (D. Mass. 2000) ("[W]ithout a cognizable class defined by

stable and objective factors [that] enable me to determine whether a particular

individual belongs in the class[,] class certification is inappropriate because class

membership is not ascertainable."). The District Court therefore properly stuck the

class claims.

　　　　Rule 23 specifically authorizes a motion to strike class allegations and

provides a court with the power to order that the "the pleadings be amended to

eliminate allegations about representation of absent persons and that the action

proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  Under Rule 23, the viability of

the proposed class should be determined "at an early practicable time" after the

commencement of an action, Fed. R. Civ. P. 23(c)(1), and where plaintiffs propose

a patently uncertifiable class, this decision regarding viability can be made on the

pleadings alone. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

Numerous court have, therefore, stricken class allegations during the early stages

of litigation. *See, e.g., Scott v. Family Dollar Stores, Inc.,* 2012 WL 113657, at *7

(W.D.N.C.) (dismissing plaintiffs' class claims and denying plaintiffs leave to

amend class theories because those theories were inherently defective); *Vega v. T-*

*Mobile USA, Inc*., 564 F.3d 1256, 1279 (11th Cir. 2009) (vacating district court's

class certification order and holding that "the complaint, as pled, could not sustain

class action certification as a matter of law"). "[G]iven that Rule 23(c)(1)(A)

instructs courts to determine whether a class may be certified '[a]t an early

practicable time,' courts may – and should – address the plaintiff's class

allegations when the pleadings are facially defective and definitively establish that

a class action cannot be maintained." *Wright v. Family Dollar Inc*., 2010 WL

4962838 (N.D. Ill.).

### D.    The Classes Pleaded by Plaintiffs Would Be Unmanageable

Courts have held that judicial efficiency must be taken into account when

determining whether to permit a § 216(b) collective action to proceed. *See*, *e.g.*,

*Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (denying

motion to conditionally certify class pursuant to § 216(b) where individualized

inquiries were required and conditional certification would undermine "the

economy of scale envisioned by the FLSA collective action procedure").

Likewise, Rule 23(b)(3) requires Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Even among the named Plaintiffs, differing work experiences demonstrate that class treatment would not be an efficient means to resolve this case. For example, Rivers and McCarthy claim to be regularly scheduled to work forty hours a week, but Manning is scheduled only for thirty-six hours, and Williams is scheduled only for twenty-four hours. R.A. 341-345, ¶¶ 89-92. As a per diem nurse, Williams works shifts of varying length – including some as short as four hours, which would not entitle her to meal breaks under Massachusetts law or the 1199SEIU CBA – while Manning allegedly works twelve and sixteen hour shifts. R.A. 341-342, 344-345, ¶¶ 89, 92; *see also* Mass. Gen. Laws ch. 149, § 100; CBA between 1199SEIU United Healthcare Workers East and BMC, Art. 9, Section 4. The amount and types of training performed by the named Plaintiffs also varies. Rivers, for example, claims to participate in thirty-two hours of training per year, while McCarthy, as an administrative assistant, apparently has no such requirement. R.A. 342-343, 344-345, ¶¶ 90, 92. These are merely a few of the factors likely to vary among putative class members that could affect whether an employee has worked unpaid overtime. Such variation would inevitably cause

adjudication of putative class members' claims to devolve into a morass of individual inquiries.

As described above, Plaintiffs seek certification of six subclasses for their FLSA claims, as well as at least one Fed. R. Civ. P. 23 class. Rather than helping to make the putative class more manageable, however, these proposed subclasses demonstrate the degree to which class or conditional action treatment in this case would be unmanageable. As a preliminary matter, the Amended Complaint fails to explain how their proposed subclasses would be managed effectively. *See Barrus*, 732 F. Supp. 2d at 254 (striking class allegations where "Plaintiffs do not explain how jury instructions and testimony could be compartmentalized to ensure the jury applies the proper law to the evidence for that subclass"). In fact, the subclasses that Plaintiffs propose would be complex and difficult to apply. Some class members – including named Plaintiff Lisa Rivers, who is alleged to have been a bargaining unit member during some periods of her employment and non-union during other periods – would jump from subclass-to-subclass. *See*, *e.g.*, R.A. 349-350, ¶ 116 (defining two subclasses, one consisting of "all Plaintiffs and Class Members for workweeks during which they were not subject to a collective bargaining agreement" and the other consisting of "any Plaintiffs and Class Members who are or were subject to a collective bargaining agreement, only for the workweeks they were subject to the terms of such an agreement").

Moreover, it is not clear from the Amended Complaint that adequate representatives exist for each of these classes. For example, Plaintiffs propose a subclass of "Class Members subject to the Unpaid Training Policy" and who "were not subject to a collective bargaining agreement." The only named Plaintiff alleged never to have been in a bargaining unit is Reva McCarthy, and there are no specific allegations of unpaid training time with respect to her. R.A. 344-345, ¶ 92. Under these circumstances, it is clear that Plaintiffs' class and collective action allegations lack a coherent class definition, are insufficiently supported by fact, and have no chance of succeeding on the merits. Those allegations are therefore immaterial and impertinent, and the Court should strike them from the Amended Complaint pursuant to Fed. R. Civ. P. 12(f).

## V.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING PLAINTIFFS LEAVE TO AMEND

Assuming that this Court affirms the District Court's dismissal of the Amended Complaint based on Plaintiffs' failure to meet the *Twombly/Iqbal* pleading standard, the District Court's denial of leave should be reviewed only for an abuse of discretion. *See Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) ("denial of [] a motion [to amend] will be upheld so long as the record evinces an arguably adequate basis for the court's decision").

Plaintiffs rely almost exclusively on the *Pruell II* decision in arguing that the District Court abused its discretion in denying them leave to replead their claims. *Pruell II*, however, is readily distinguishable from the case here. There, the District Court's original dismissal laid out two possible standards for pleading their claim that they worked overtime, but the court found that the plaintiffs had failed to meet even the more lenient of the two, making it unnecessary to determine which method was most consistent with *Twombly*. *See Pruell v. Caritas Christi*, 2010 WL 3789318, at *3 (D. Mass.) ("I need not choose between the competing standards, because the plaintiffs cannot even satisfy the less stringent one."). On appeal, the court granted the plaintiffs' request for leave to replead, acknowledging that it arguably may have been reasonable for them to rely on that more lenient standard, even though the District Court (and this Court) ultimately rejected it. *Pruell II*, 678 F.3d at 15. Plaintiffs here cannot claim to have been similarly confused or to have acted in reasonable reliance on the District Court's decision.

In dismissing Plaintiffs' claims in February 2011, the District Court provided a detailed description of the type of information that Plaintiffs would need to plead in order to state a claim. *See* Pls.' Add., 3. The Court called for Plaintiffs to provide *specific examples* of instances in which they believed they were wrongfully denied wages:

> The core of the complaint is the FLSA claim for unpaid wages, premised on general allegations of work during lunch breaks, before and after shifts, and

52

> at mandatory trainings.  But the complaint does not allege, even in the most approximate terms, the dates on which each of the named plaintiffs worked during lunch breaks, the aggregate time of those lunch breaks, and the amount of unpaid wages. . . . 25 pages of boilerplate will not suffice. There is not a specific allegation anywhere in the complaint of unpaid work that plaintiffs performed.

*Id*.  Rather than make any attempt to explain the circumstances of the violations they alleged, Plaintiffs once again filed a mostly threadbare complaint, providing some of the specific details that the court demanded, but ignoring the court's overarching instruction to provide "specific allegation[s] . . . of unpaid work."  In essence, Plaintiffs pleaded twenty-five pages of boilerplate, accompanied by four paragraphs of disembodied information about Plaintiffs' work locations and schedules, placing the onus on the Court and Defendants to make sense of their claims.  The supporting  information that remains missing from Plaintiffs' Amended Complaint is now and has always been within their possession, and their failure to provide it violated the spirit of the District Court's prior order.

This type of gamesmanship is characteristic of the manner in which Plaintiffs' counsel has litigated each of their numerous cases against hospital systems across the United States.  *See*, *e.g.*, *Cavallaro*, 678 F.3d at 10 (noting that "[a] number of courts have made clear that they will not put up with game-playing omissions of plainly relevant detail" and citing multiple cases criticizing Plaintiffs' counsel for such actions); *Nakahata v. New York-Presbyterian Healthcare System, Inc.*,  2012 WL 3886555, at *4 (S.D.N.Y.) (dismissing claims with prejudice and

53

noting, "Here we go again. Three different sets of plaintiffs, represented by the same law firm, bring [wage] claims against hospitals and related health care entities.  As before, all contain strikingly similar allegations.  These actions represent merely three of a dozen similar actions that Plaintiffs' counsel has initiated in district courts around the country."); *see also* Pls.' Add., 24 ("Litigation is not a game, and while leave to amend should be liberally granted that does not mean it should always be granted.")  As these cases show, Plaintiffs' counsel undoubtedly  is aware of the contours of the pleading standard.

Under such circumstances, denial of leave to amend is not an abuse of discretion.  *See ACA Fin. Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) ("Plaintiffs may not, having the needed information, deliberately wait in the wings . . . with another amendment to a complaint should the court hold the first amended complaint was insufficient); *Palmer v. Champion Mortg.*, 465 F.3d 24, 31 (1st Cir. 2006) (affirming denial of plaintiff's request for leave where there was no indication that "newly discovered evidence, not previously available, suddenly came to light"); *Curran v. FedEx Ground Package Sys., Inc*., 593 F. Supp. 2d 341, 345 (D. Mass. 2009) ("[T]he plaintiffs have known of the defendants' objection to the adequacy of the pleading for several months, but have made no attempt to allege additional facts to satisfy the *Twombly* standard.  If the plaintiffs have information they could allege to satisfy the standard, but have held it back, they are

guilty of undue delay.  If they do not have the information, giving them leave to amend is futile.  In either case, leave to amend should be denied.").

Finally, to the extent that this Court affirms dismissal of Plaintiffs' claims on the basis that they are precluded by federal labor law principles, the dismissal of those claims with prejudice should also be affirmed because any reformulation would likewise be precluded.  As Plaintiffs acknowledge, leave to amend need not be granted where it would be futile.  *See* Pls.' Br., 51 (citing *Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25-26 (1st Cir. 2007)).  Accordingly, the District Court's dismissal of the Plaintiffs' claims with prejudice should be affirmed.

## CONCLUSION

For the foregoing reasons the District Court's dismissal of Plaintiffs' Amended Complaint should be affirmed.

14791715v.3

Respectfully submitted,

BOSTON MEDICAL CENTER
CORPORATION, ELAINE ULLIAN, and
JAMES CANAVAN

By their attorneys,


 /s/ *Richard L. Alfred*
Richard L. Alfred (Appeals Bar No. 41022)
Kristin G. McGurn (Appeals Bar No. 27931)
C.J. Eaton (Appeals Bar No. 1129804)
Jessica M. Schauer (Appeals Bar No. 1142613)
SEYFARTH SHAW LLP
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
DATED:  September 14, 2012    Telephone:  (617) 946-4800

56

14791715v.3

Nos. 12-1573 / 12-1563

# UNITED STATES COURT OF APPEALS
# FOR THE  FIRST CIRCUIT

---

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

---

    1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒    this brief contains 13,573 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

☐    this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

    2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☒    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point, *or*

☐    this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

/s/ *Richard L. Alfred*
Attorney for Defendants-Appellees

Dated:  September 14, 2012

57

Nos. 12-1573 / 12-1563
**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

ELIZABETH MANNING, LISA RIVERS, RHONDA
WILLIAMS, and REVA MCCARTHY, on behalf of themselves and
all other employees similarly situated,

Plaintiffs-Appellants,

v.

BOSTON MEDICAL CENTER CORPORATION,
ELAINE ULLIAN, and JAMES CANAVAN,

Defendants-Appellees,

BOSTON REGIONAL MEDICAL CENTER, INC., BOSTON
REGIONAL MEDICAL CENTER, LLC, and BOSTON MEDICAL
CENTER 403B RETIREMENT PLAN,

Defendants.

---

## CERTIFICATE OF SERVICE

---

I, Richard L. Alfred, hereby certify that this brief was filed through the

United States Court of Appeals for the First Circuit ECF system and will be sent

electronically to the registered participants, as identified on the Notice of

Electronic Filing ("NEF"), and paper copies will be sent to those indicated as non-

registered participants on September 14, 2012, by first class U.S. mail.

 /s/ *Richard L. Alfred*
Richard L. Alfred

14791715v.3

## Addendum Table of Contents

Order - March 10, 2011 ......................................................................... Add 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-11724-RWZ

ELIZABETH MANNING, *et al.*

v.

BOSTON MEDICAL CENTER CORPORATION, *et al.*

<u>ORDER</u>

March 10, 2011

ZOBEL, D.J.

Named plaintiffs Elizabeth Manning, Lisa Rivers, and Rhonda Williams filed this class action in Massachusetts Superior Court against numerous corporate entities associated with Boston Medical Center, a hospital located in Boston, and two individuals. Boston Medical Center Corporation, Boston Medical Center 403B Retirement Plan, the president and CEO of Boston Medical Center Elaine Ullian, and the senior human resources director James Canavan, are named in the caption.[1] Some 16 other entities are identified as "defendants" in the body of the complaint. (Compl. ¶¶ 6-7, Docket # 7 Ex. 2 at 3.)

The complaint alleges, in the most general terms, that plaintiffs worked for at least one of the defendants in some unspecified capacity at some unspecified time. They were not, it states, compensated for work performed during their 30-minute lunch breaks and both before and after their shifts, nor for mandatory training. No dates are

_____

[1]Boston Regional Medical Center, LLC and Boston Regional Medical Center, Inc., were terminated from this action. (Docket Entry Aug. 10, 2010.)

given and no specific training is identified.  There are eleven counts: (1) violation of the Massachusetts Wage Payment Act, Mass. Gen. Laws ch. 149, § 148; (2) violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 151, § 1A; (3) and (4) breach of contract; (5) breach of implied contract; (6) money had and received; (7) quantum meruit; (8) fraud; (9) negligent misrepresentation; (10) equitable estoppel; (11) promissory estoppel; (12) conversion; and (13) failure to keep accurate records.

Defendants removed the action on the basis of federal question jurisdiction because, they assert, the state law claims are completely pre-empted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).  Now pending is their motion to dismiss and plaintiffs' motion to remand.[2]

I.      **Motion to Remand (Docket # 11)**

In the usual case, the existence of federal question jurisdiction is determined by application of the "well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (internal quotation marks omitted).  An independent corollary of this rule is the "complete pre-

_____

[2]The complaint in this lawsuit has appeared, in all but identical form, in at least eight lawsuits filed by plaintiffs' counsel in the Commonwealth against various healthcare providers.  I granted a motion to dismiss a related case against the same defendants with identical factual allegations but different federal claims.  Manning v. Bos. Med. Ctr. Corp., No. 09-cv-11463 (Feb. 28, 2011).  Judges O'Toole and Saylor of this district denied motions to remand and granted motions to dismiss lawsuits against different defendants but with substantially identical allegations and state law claims to the present suit.  Cavallaro v. Umass Mem'l Health Care, Inc., No. 09-cv-40181 (Saylor, J., July 2, 2010 and Dec. 20, 2010); Pruell v. Caritas Christi, No. 09-cv-11722 (O'Toole, J., Sept. 27, 2010).

emption doctrine.  On occasion, the [Supreme] Court has concluded that the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  Id. at 393 (internal quotation marks omitted).

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), exerts this extraordinary preemptive force.  See Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557 (1968).  The statute "governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement."  Caterpillar, 482 U.S. at 394 (internal quotation marks omitted).  Its preemptive reach therefore extends beyond breach of contract claims to reach state law torts that present "questions relating to what the parties to a labor agreement agreed."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985).

Plaintiffs do not explicitly refer to a collective bargaining agreement ("CBA") in the complaint, but they do state that "[d]efendants entered into an express contract with Plaintiffs and Class Members that was explicitly intended to order and govern the employment relationship between defendants and Plaintiffs and Class Members." (Compl. ¶ 107; see ¶¶ 108-09, 116.)  While the complaint fails to contain any identifying information about this contract, it is apparent from the briefing that it is a CBA.  Defendants explain that the terms of employment for named plaintiffs are governed by one or more of five CBAs, which are attached to an affidavit filed in

3

support of the motion to dismiss (Ex. 1-5 to Aff. of C.J. Eaton, Docket # 15), and

plaintiffs have not identified any alternative "express contract."

      The CBAs contain numerous provisions addressing base pay rates, mandatory

rest breaks, pay on holidays, on-call hours, and both daily and weekly overtime pay,

among other relevant topics.  (See Defs.' Mem. in Supp. 20-21 & nn.29-43 (citing CBA

terms).)[3]  There is no single, uniform definition of work or wage rate; the wage due, if

any, depends upon how the employee's responsibility is characterized and may vary

throughout the workday.

      The two breach of contract counts are expressly founded on rights created by

the contract. The remaining claims, which are pled in terms of misrepresentation, quasi-

contract, or accounting causes of action, similarly assert a failure to pay wages due for

work performed -- insofar as the court can discern a legal theory from the nebulous

allegations in the complaint -- and will thus require both interpretation of the CBA

provisions categorizing hours and the associated wage and a determination of how

those CBA terms integrate with other statements by the defendants.   (See CBA

integration clauses, Ex. 1 at Art. XXXVII; Ex. 2 at Art. 38; Ex. 3 at Art. 30; Ex. 4 at Art.

27; Ex. 5 Art. XXX, Docket # 15.)  Accordingly, the claims are completely preempted

and fall within this court's jurisdiction.[4]  Compare Adames v. Exec. Airlines, 258 F.3d 7

---

     [3]The citations to Ex. 4, the CBA between Boston Medical Center and 1199SEIU
United Healthcare Workers East, Skilled Maintenance, are not accurate, but the terms
cited do appear elsewhere in that CBA.

     [4]Plaintiffs argue that the statutory claims create rights that exist independently of
the CBAs.  Assuming, arguendo, that this is correct, those claims nonetheless fall
within the court's supplemental jurisdiction.  28 U.S.C. § 1367.

(1st Cir. 2001) (applying the § 301 complete preemption standard and finding Puerto Rico statutory claims for overtime, meal period, vacation, and other pay completely preempted under the Railway Labor Act because the calculation of wages would require interpretation of numerous, inter-related CBA provisions), with Livadas v. Bradshaw, 512 U.S. 107, 125 (1994) (finding no § 301 complete preemption of state statutory claims where there was "the simple need to refer to bargained-for wage rates in computing the penalty").

## II.     Motion to Dismiss (Docket # 9)

For the reasons set forth in the related case Manning v. Boston Medical Center Corp., 09-cv-11463 (Feb. 28, 2011), the vague, conclusory allegations in the complaint do not meet the requirements of Fed. R. Civ. P. 8.  In addition, to the extent claims in this suit are premised, in part, on communications other than the contents of the CBAs, none of those statements are identified in the complaint.  The complaint fails to state any claim.

Plaintiffs are also exempt from the coverage of the Massachusetts statutes invoked in Counts I and 2 which, respectively, exclude "an employee of an incorporated hospital . . . which is conducted as a public charity," Mass. Gen. Laws ch. 149, § 148, and "any employee who is employed . . . in a hospital," Mass. Gen. Laws ch. 151, § 1A.[5]

## III.    Conclusion

---

[5]The court takes judicial notice that Boston Medical Center is a 26 U.S.C. § 501(c)(3) tax exempt organization.

5

Plaintiffs' motion to remand (Docket # 11) is DENIED.  Defendants' motion to dismiss (Docket # 9) is ALLOWED WITHOUT PREJUDICE as to the recharacterized § 301 count and WITH PREJUDICE as to all other counts.  Defendants' motion for leave to file a notice of supplemental authority (Docket # 36) is ALLOWED.  Plaintiffs' motion for leave to file a response (Docket # 37) is ALLOWED.


    March 10, 2011                        /s/Rya W. Zobel
            DATE                            RYA W. ZOBEL
                          UNITED STATES DISTRICT JUDGE